May it please the Court, Kara Hartzler, Federal Defenders for Jorge Aguilera-Rios. The sole question in this case is whether the immigration judge's flawed order of deportation caused Mr. Aguilera prejudice. It did for two reasons. First, Mr. Aguilera was not deportable as charged at the time of removal, and if the Court agrees with us on this point, the case is over. Second. Try to talk a little slower. He was not, I didn't hear the first one. He was not deportable as charged. Okay. And even if the Court believes that he was deportable as charged, it is plausible that a reasonable immigration judge would have granted him voluntary departure. I'd like to begin with the deportable as charged argument. The Supreme Court's decision in Moncrief shows that the immigration judge erred in finding Mr. Aguilera's firearms conviction to be categorically deportable. Can I just cut through this one for a minute? Absolutely. Let's assume we have agreed with you, although the case isn't directly on point, so we would have to overrule an earlier case on a, you know, sort of this is inevitable sort of theory. So that's problem one. But problem two is that that wasn't the law at the time, and our case law seems to say that that matters. In other words, the question was what was the law at the time as opposed to now. So what do we do with that? I believe Your Honor is referring to the Court's decision in Vidal-Mendoza, and I would contest that Vidal-Mendoza does not apply here for two reasons. First of all, Vidal-Mendoza dealt with a situation where the person was actually eligible for relief, and that was the context of that decision. In fact, Vidal-Mendoza is replete with references to how the IJ has this duty to advise of eligibility for relief. But here we're dealing with a different question. We're dealing with whether the person was removable as charged. And unlike relief, which is a privilege, this is a question of whether a lawful permanent resident was properly removed from the United States. It's a pure question of law, and it's something that, in other words, we would argue that Vidal-Mendoza doesn't apply, and that we need to look at whether Mr. Aguilera-Rios was deportable in light of all of the case law, in light of the substantive question of whether his offense was categorically removable. The other reason that I would say that... What about the recent Gomez case, which is currently pending in rehearing, so... Correct, Your Honor. Yes. Gomez also dealt with the question of eligibility for relief rather than deportable as charged. And in fact, Vidal-Mendoza and Gomez both have a contrary holding in some ways to Camacho-Lopez, which is an earlier decision from this Court which did consider the question of deportable as charged. Now, in Camacho-Lopez, there was the exact question as here, in which the Court applied subsequently decided case law and said that that case law may apply retroactively to the question of deportable as charged. Is there any doubt, though, that Camacho-Lopez, the result was because of a concession by the government? Is there any doubt about that? There is, Your Honor, because the government did not concede that point in its briefing. The government absolutely adamantly argued the retroactivity question... That doesn't really matter because the Court purported not to be deciding the question. Your Honor, even if the government did concede that, the Court was not bound by its concession. The Court still has a responsibility to reach the right legal conclusion, regardless of whether the government conceded the point or not. And the Court in that case did reach the right conclusion. And so we would argue that neither Vidal-Mendoza nor Gomez had the authority to overrule Camacho-Lopez, which deals with the exact same deportable as charged issue that we have here. Do you have any Ninth Circuit authority? I don't want to be unfair and ask you to cite something off the top of your head, but is there a Ninth Circuit authority that indicates in a case where an issue is conceded that the outcome on that conceded issue can be precedent or is precedent? I don't have any off the top of my head. I'd be glad to... No, I just thought... I would also just like to go back for a moment to the point of whether Moncrief in fact overruled this Court's decision in Gill, because I do believe that actually the Supreme Court reached that issue in Moncrief. And the reason is this. The true holding in Moncrief was not necessarily about a marijuana statute. The true holding in Moncrief is that courts are bound to consider the full spectrum of the conduct that a statute may reach when considering the categorical approach. And the Court then took that holding and applied it to the marijuana statute. And that's exactly what's going on here. We have this holding from the Supreme Court that you must consider the full conduct of the statute, which under California law includes antique firearms. And the Court should similarly apply Moncrief's true holding to find the statute is categorically overbroad. And I would also point out that below, the Solicitor General actually conceded that point. The Solicitor General said that if Moncrief came out the way that it actually did, then it would overrule Gill. So that's certainly not binding on this Court, but it's an indication of the scope of Moncrief. And that it did reach the broader question than just the marijuana statute. Does it matter to your client whether we decide this case under this rubric or the one you're about to discuss, the voluntary departure rubric? Either would have the same result. So I'll move on to the question of eligibility for relief and whether relief was plausible. First of all, this case is very similar to Melendez-Castro, where the Court found that the person did not have a meaningful opportunity to apply for voluntary departure. And in that case, the Court actually remanded for a prejudice finding. Therefore, we need to look at this under a reasonable IJ standard. Would a reasonable IJ have granted relief in this situation? As we've pointed out in our briefing, first of all, we believe that statutory eligibility for relief is enough. But if the Court disagrees with us on that, I would point to this Court's decision in Alcazar-Bustos. Let me ask you this. I take it from your briefing that you think that, consistent with Melendez-Castro, is that this Court, if it's inclined towards your view, can't give you relief, but instead it needs to be remanded. Consistent with Melendez-Castro, we would believe that, yes. But Melendez-Castro is not precedent that the relief has to be remanded. No, Your Honor. Why remand? Does there need to be a further development of the record to determine exactly what was before the IJ so that you can apply what you think is the standard of the reasonable IJ to that record evidence? We would argue that is certainly one way the Court could resolve it. Well, do you need more record? Do you have enough of a record now in front of this Court that this Court can look at the positive factors and the negative factors and apply, if you're correct, the reasonable IJ standard and make a determination? We believe that there is enough before the Court right now. If the Court disagrees, we would point out that the district court never actually reached the prejudice question because the district court only looked at it through that particular IJ's perspective, which is not reasonable. I guess what Judge Murphy is asking and what I would ask is, presumably you had the responsibility at that point in the district court to present whatever evidence you wanted to present about what would have been presented had he been asked the right questions at the time of the IJ hearing. So it's not a question of making any more record. I wouldn't think you have an opportunity to make any more record. We believe that the Court can reach the issue. Okay. Give me a litany of what are the positive matters that would support granting a voluntary removal. My client had been in the United States from the time he was a young child. He had 21 years in the United States. Do you consider the time period when he was here after he committed crimes? Absolutely. Because it was still residence. He had a United States citizen child. He came here when he was five years of age. He came here when he was five. That's correct. All right. He had a United States citizen child. His father was here, two siblings, five half-siblings. He had a... At the time in question, he had a total of seven siblings? I believe there were two siblings and five half-siblings, Your Honor. All right. He was a former gang member. And all of those were citizens? They were either citizens or lawful permanent residents. He had a long history of employment, and we believe that that more than satisfies... Well, he dropped out of high school when he was 10, at the 10th grade, because his girlfriend had a child, and he went to work to support them. That's correct, Your Honor. You were saying something about gang membership. What is... I bring that up because in Alcazar Bustos, the court found that a current active gang member had a plausible claim to voluntary departure. Here, we have a former gang member. So it's a positive thing that he formally was because he quit? It was no longer. It's a positive thing that he has a better set of equities. You were asked for the positive factors, not the negative ones. And also, all we're talking about is voluntary departure. Exactly. Is what? All we're talking about here is voluntary departure, not having him stay here. Absolutely, Your Honor. Well, let me ask you this. Does the concept of plausibility lower the standard or not? In terms of... I mean, you just have to show plausibility of a claim for voluntary removal. Exactly. We just have to show that it's plausible that a reasonable immigration judge would have granted. And this Court's case law already holds that a person with similar equities has a plausible claim. Do you have anything else on positive things? I'm making a list here. I would also... He has a long... I would... Going back to the gang membership, I would point out that he's turned his life around. He has four U.S. citizen children, all under the age of 16. That's correct. That's correct. Those would be the primary equities that I would point out to you. This is kind of a weird question, but since we're talking about voluntary departure, why do all his connections in the United States matter? The whole point was he was going to be leaving. Well, one reason, Your Honor, is because voluntary departure is often very convenient for a person who wants to try to seek legal status in the U.S. in the future. And the most common way... But he would still have a lot of problems doing that. He would still have a lot of problems doing it, but he would have at least the grounds upon which to get legal status in the future through a lot of family members who have legal status. He did say at the hearing, didn't he, that he had no relationship with these family members. He stated that, but actually he did state that in the context of the immigration judge asking him whether he could get proof of a certain type of status, which would be, for instance, more related to his parents than necessarily his child. And furthermore, we would point out, Your Honor, that that wasn't necessarily... That wasn't a plausible word at that time, or that he had a plausible claim. So he wasn't in a mode where he would try to present his case in the best way possible. I will conclude there for the moment. Good morning. May it please the Court. Mark Rahe for the United States. Your Honors, the first issue in this case was the defendant removable as charged. Setting aside the fact the government still preserves its claim that this issue was waived, since it wasn't preserved below, in fact, in excerpt of record page 81, the defense counsel and the district court... It's complicated by the fact, though, that under our case law at the time, it was true, right? But I don't think that excuses a defense from still preserving a claim for the record. I mean, I see lots of briefs that say, you know what, we're going to raise this issue. We know it's controlled by Ninth Circuit authority, but we're preserving it. It's always a problem, and I think our case law is both ways about what we do about that, because on the one hand, you know, district judges are going to have to deal with people standing up all the time and saying, I know this is Ninth Circuit law, but I'm not willing to see to it. That's not very helpful either. So we basically have... Isn't the ultimate fact that we have discretion whether to decide it or not in those circumstances? And we have sometimes. You do. But I think under... For Rule 12B errors, under 12E, it has to be good cause shown. Yeah. Well, the good cause is this was the law at the time. But every single case except for Moncrief that the defense relies on was decided before the motion is dismissed. But I understand. I just want to make sure that the government is preserving that claim. But even if we get to the merits, the government stands behind its position that regardless of Moncrief, the government knows it says you now look on collateral review to judge a removal under the law in effect at the time. I think one important point to emphasize, at no point in this litigation has my opponent ever disputed our view that under BIA law, at least... But what she's disputing is under the law at the time. Correct. And that's, you know, an important question as to which the Tenth Circuit, for example, in an opinion by Judge Murphy, has one view. And our case law, insofar as it addresses this precise question, actually seems, in the Camacho case, seems to say that it isn't the law at the time, which makes some sense when you're dealing with the grounds for deportability. Well, with all due respect, Your Honor, I disagree. When one looks at Camacho-Lopez, I mean, it takes up only a little over a page in the federal record in the F-3rd. There's no question that the court acted on a concession there. Well, let me ask the obvious question. Is there any case of this Court holding in the context of a grounds for removability that it's the law at the time that applies? No, not yet. And we acknowledge that because this, the Dal Mendoza, I mean, here we are, it's February 2014. So the only case that does deal with it is at least arguably in the petitioner's favor, and there's no case to the contrary. Correct. So, therefore, we should address the question at best afresh. So if we address it afresh, what do we say? We say that Moncrief is not clearly irreconcilable with this, with the case law, Gill v. Henry. Well, that's a different point. That's not the question of, I thought you were arguing that the question was, even if it was clearly irreconcilable and even if we held now that it was, that there was not a valid ground for deportability, it still shouldn't apply. I thought that was your primary argument. I'm sorry, Your Honor. I mean, in 1993, the BIA held in matter of P.F. that the mere chance that an antique farm could be used is not enough to defeat that grounds for removability under 1227A2C. But the ultimate question is whether this person should now be guilty of criminal, for criminal liability for returning to the United States after a deportation, which we now know was an invalid one. Well, but I wouldn't accept the premise that it was invalid. 1326D3 says it has to be fundamentally unfair. Isn't it fundamentally unfair to be deported for something for which you shouldn't have been deported? Not if it was under the law at the time. I mean, this was eight years after this removal. Under that premise, somebody could be removed in an immigration court today where everybody in the world would agree that it was valid under the law today. But then somehow five, six years later, the law changes. I mean, this is not direct review. There has to be a difference. That's what Vidal-Mendoza said, too. I think if you accept my opponent's position, then there really is no more difference between collateral review and direct review. I mean, here, from PF, and then I believe there's other cases that we cite at pages 20 or 21. Well, there also has to be, as I recall the standards, some barrier to review at that time of the issue. A barrier to review? I thought that the standard in the 1326 cases as to collateral review included not being able to review the question. That's the 1326D2, exactly. I mean, we've assumed that. Our position rests entirely on 1326D3, the fundamental unfairness. I understand that. So if you're conceding that, in fact, and I don't know why this is, but if for some reason he didn't have the opportunity at that time to adjudicate whether it was a valid ground for removal, then why isn't it fundamentally unfair when we now know that it was not a valid ground for removal? I think because for at least the eight years intervening, it was valid. And, in fact, in 2010, the BIA in matter of Mendez-Oriana reaffirmed its position for matter of PF, which had been decided in 1993. So I think you can extrapolate from that that even had he challenged this removal at the time on the theory that it was not a categorical firearms offense, he would have run up against BIA authority. Now, I know my opponent tries to make a distinction between, well, you know, the cases so far that have been decided under the Dahl-Mendoza are eligibility for relief cases. Those are removability. This is the same legal issue. And it's not like the IJ. It's the same human being in the same unitary proceeding that has to make a call both on removability and on relief. And if the fundamental point that drove this Court's decision in the Dahl-Mendoza was the practical one, that we don't expect IJs to be clairvoyant, I don't see how it's any distinction to say, well, it's just a removability case. I mean, there's an 8 CFR 1240.10 requires the IJ to make findings of removability. When it's about the categorical approach, it's the exact same legal issue. And the other thing that, you know, if you take my opponent's position, it's basically two bodies of law will apply to the same unitary proceeding. On collateral review, when we look at prior removals, it will be, well, if it's about removability, suddenly we can look to cases that were decided yesterday. But if it's about relief, we're going to look at the law at the time. I don't think that is a sound view of the development of the law. But moving to the pre-conclusion voluntary departure, the government, we conceded that there was a due process violation in the way that issue was handled. However, we do not believe that the defense has carried the burden of showing prejudice. And I know there were some questions about the kind of record that was made. There was no affidavit filed by this defendant. You mean now? Yeah, in the district court, exactly. And if, you know, the whole tenor of their claim is that, well, the IJ short-circuited me by telling me about this relief and then in the same breath denying it, I think that claim, for prejudice purposes, would have more appeal if suddenly we find out now on collateral review that there were X, Y, and Z equities that no one knew about at the time. Well, are you saying that this parade of positive factors or mitigating factors that was listed in court today does not exist in the record in the district court? No, we're saying that it does. But my point being, I think the defense would have a better case if they could say, guess what, there were one, two, or three things that we never told the IJ. That's not the case. I'm sorry, I'm not understanding either. I thought they are saying there are one, two, or three things we never told the IJ because you never asked us. That's not my understanding. The things that they refer to in the brief or the long residency, that was before the IJ. The defendant said, I came here when I was a kid. The fact that he had a 7-year-old son, and I know Judge Ferguson pointed out, he has four children now, but three of them were born after that removal hearing. For purposes of collateral review, we can only look to the record that existed at the time. But does it matter that, as I understand it, at this hearing in front of the IJ, that you had an unrepresented person who was told that it doesn't matter because your criminal record is so bad? Isn't that a suggestion that it wasn't open to him to save a judge and list a bunch of positive or mitigating factors? Even if I agreed with that, Judge Murphy, and let's assume that that's the case, I would think that when this case gets to district court, opponents are very able counsel, and they do this in 1326D cases all the time, they file an affidavit where the defendant finally has the choice. What I'm confused about is if there isn't an affidavit, what is the information on which they're relying? In what form does it exist in the record? I mean, I thought a lot of it was conclusory assertions. I mean, a lot of it's conclusory assertions, but then it comes from the PSR. Oh, all right. So it's there. It does exist. To some extent, yes, but it's uncorroborated. I think that's when one looks at the records. It's uncorroborated. You rely on PSRs all the time. I'm saying, you know, I've seen dozens of cases where they say they file an affidavit. Guess what? I have a 7-year-old son. I spend Tuesday, Wednesday, and Thursday. I do this, that, and the other. I give 20% of my wages. We know nothing about that here. All we know is the mere fact. I mean, what the – when you're on the court. So you're telling us that even though the government tells us all the time that whatever is in a PSR is binding on sentencing, that we should not believe it. It's not adequate for this purpose. I'm not saying – I'm saying for purposes of plausibility, all we have are these things that face value. Another argument that we made in our paper is that the defense never responded to. Given this defendant's criminal record with five convictions as an adult in the five years, his case would have triggered the heightened standard. And I believe that's at pages 40 and 41 of our response brief. When there's a heightened standard, it's a burden on the defense to show not just any old positive equities, but unusual and outstanding equities. And it's for that reason you do have to parse the record. Even if the defendant was here for 25 years, we saw a case law that says when it's riddled with criminal behavior, in this case drug use, gang membership, it doesn't rise to the level of outstanding or unusual equity. If you have a family member, in the United States v. Gonzales-Valerio, this court held that 16-year residents having family members here whom the defendants support is neither unusual nor outstanding. This is why I talk about the lack of an affidavit, because there was a heightened standard. Sure, you can rely on what's in the PSR, but if it's run-of-the-mill equities that doesn't – So let's assume that we have sufficient information for now, okay, and that the PSR is adequately reliable. What is your position with regard to whether the equities shown on the record meet the reasonable I.J. standard? In other words, even if the I.J. did know all this stuff, that's still not the standard. The question isn't what he would have done. The question is what a reasonable I.J. would have done, right? Exactly. So what's the answer to that question? I still think a reasonable I.J. would have denied relief. And why do I say that? What about the comparative to other cases? Well, exactly. I mean, in the defense briefing, your Honor sat on the case Rojas-Pedroza. I'm not – go ahead. I'm not hearing you. Go ahead. Oh, I'm sorry. Your Honor was on a case a year ago, United States v. Rojas-Pedroza. And what it held was that for purposes of pre-conclusion voluntary departure, it's not enough to point to other people with criminal records who got relief. You have to look at similar equities. Right. In the entire defense briefing, there are only two BIA cases. I believe it's Gonzales-Figueroa and Pineda-Castellanos, where the defense holds up somebody who got this relief. They're not similarly situated. Those defendants showed rehabilitation. In fact, Gonzales-Figueroa, even if he had some criminal records, they weren't as a result of his alcoholism. He had his family members testify at the I.J. removal hearing that he had, you know, reformed. He had been to AA. The mother testified that he helped her with the rent, and he had a pending visa petition. Because I know Your Honor asked earlier, well, what's the point of talking about relatives in this country? One of the factors when you see the people getting or the aliens getting this relief is that they already have one foot in the direction of applying for some sort of status here. And that's why pre-conclusion voluntary departure is seen as sort of an act of clemency that doesn't shut that door forever. Pineda-Castellanos also had a visa petition pending. In this case, there were no petitions pending. In those other cases, just the handful that the defense cites, when you look at the quality of the family ties, it's not just any family ties. The phrase is close family ties. In Excerpt of Record 103, this defendant states during his removal hearing he has no contact with his family. He had what? He has no contact with his family. So our position is, I mean, you look at that 25-year residency. It's riddled with criminal acts, gang membership. In fact, he gets LPR status in 2000, and he incurs his five convictions, one a year for the next five years thereafter. You look at the family ties, but for mentioning that there are people that, you know, siblings, half-siblings that are in this country, there is no evidence whatsoever of the closeness of that tie. One child at the time, a 7-year-old son, again, no mention of support or what this defendant did for that child. And then compare it to the record, and he's in prison during his removal hearing. I think that's something that shouldn't be lost. Usually IJs look for rehabilitation. Again, five convictions in five years averaging one year. How many of those were adult convictions? For this defendant, all five of them. And one of the comparables, as I understand it, they were juvenile convictions? Correct. Alcazar-Bustos had only two adult convictions, both incurred when he was 19. And the panel that decided this case said, we don't find that to be a significant record. This defendant, on the other hand, was 22, 23, 20. They were all in his early 20s. And how old was he at the time of the hearing in front of the IJ? He was born in 79, so it's 89, 99. I guess 25, I believe. So I guess unless the court has any other questions, the government would submit. I'm sorry, if I have 10 more seconds. Judge Murphy had asked about a case where we can reexamine a point that had merely been conceded. We cited one from the Ninth Circuit in a 28-J letter. It was United States v. Grajeda, 581 F3rd 1186. The cases were what? I'm sorry. I'm not hearing you very well. Oh, I'm sorry. There was a case when Camacho- This thing doesn't do anything, so don't worry about the micro, okay? Camacho-Lopez, I know Judge Murphy had asked my opponent if she had any Ninth Circuit cases that said we can look a new issue if it had just been conceded before. We filed a Rule 28-J letter, and one of them was United States v. Grajeda, which was 581 F3rd 1186, and it's footnote 8. And I believe Judge Pius wrote that opinion. He said if the case has merely assumed something and provided no independent analysis, it could be appropriate to revisit it. What about sending a case like this back for further development of the record? The government would dispute that, Your Honor, because they had that opportunity. In all the months that this case was pending, they could have filed that affidavit but didn't. So I don't know what more development that there could be. All right. With the Court's permission, just a moment or two for a rebuttal. I just want to discuss briefly the issue of fundamental unfairness because I think this is what this whole attack under 1326D comes down to. In this case, we had a longtime lawful permanent resident who was removed under the law that has since been found to be wrong. What the government is trying to do is convict him of a crime on the basis of a removal that was the government's fault, frankly, and that's fundamentally unfair. Now, the question here is whether he was removable for a firearms offense. That's a ground of deportability that is defined in federal statutes, and so all of the references to BIA case law are, frankly, irrelevant because the BIA has no special expertise in terms of interpreting federal criminal law. I mean, there are two ways one could reach that result. One would be to overturn all the earlier cases that say that you don't do retroactivity here, and the other is to try to distinguish them for the situation in which it is the ground of deportability. Now, how would you do the second? What would be the basis for saying this is different? I'm sorry, I don't quite understand. What would be the basis for leaving in place our case law and saying, well, Camacho Lopez and this case are different because it's a ground of removability and not a ground of relief? Because relief is a privilege. Relief is a way in which a person who has been found removable is nevertheless given a second chance to stay in the United States. It's a privilege. If there was an error there and we say, well, the IJ shouldn't be expected to be clairvoyant, all right. The person only lost the ability to apply for a privilege, but they were removable. Here, my client was not removable. He had his long-term green card taken away from him erroneously. That's the distinction. Thank you. I'm not grasping that. I'm still trying to get over the proposition of why is it fundamentally unfair that he's convicted, given the status of the law at the time? Because the question of whether he was deportable as charged turns on an application and the interpretation of the categorical approach. Right. And frankly, Your Honor. But I just don't understand why it's fundamentally unfair that the IJ properly applies the law at the time. Well, frankly, Your Honor, we could go back to Taylor, which created the categorical approach, arguably, and say Taylor is the categorical approach that you have to follow. And the IJ's interpretation of Taylor was actually wrong. So it wasn't the case law at the time because we needed to, the IJ should have correctly interpreted Taylor. Well, you're pointing, you're relying on some foundation that comes from the Tenth Circuit, from this judge who talks about, you know, if it's statutory, then it was the law all along. But that's not the case law in the Ninth Circuit. That's not the law, is it? Your Honor, I think this really fundamentally comes down to the question of, my client was deported when he should have been. And that in itself is a problem. But now he is being prosecuted, in a criminal prosecution, in part because of an element that was not his fault, that was wrong. And that's just fundamentally unfair. And that's where I would conclude with the Court's permission. Thank you. The matter is submitted.
judges: Pregerson, Murphy, Berzon